JOHN S. WHISLER ET AL. v. W. T. CORNELIUS, ADMINISTRATOR,
ET AL.

Decided February 13, 1904.

**1.—Land Certificate—Community Property.**
W., a single man, came to Texas prior to October 1, 1837, and by virtue of his residence here for the ensuing three years became entitled to a land certificate. He married in 1842, and died soon afterwards, leaving his wife surviving, but no children. The certificate was issued to his heirs in 1846, and was sold by the wife before its location and was located by the purchaser. Patent for the land was issued in 1847 to "the heirs" of W. Held that the certificate, or the right to have it issued, was, at the time of W.'s marriage and death, personal property, and became community property of himself and wife, and on his death became the sole property of the wife under the fourth section of the Act of January 20, 1840.

**2.—Same—Act Not Repealed.**
The fourth section of the Act of January 20, 1840, dealing with the marital rights of parties and specifically with their common property, was not repealed by the Act of January 28, 1840 (Hartley's Dig., art. 577), relating generally to the descent and distribution of intestates' estates, nor is there such repugnancy between the two acts, passed at the same session, as will prevent the application of the rule that in such cases both acts should, if possible, be upheld.

**3.—Same—Equitable Title—Laches—Stale Demand.**
The owners of the land under the sale of the certificate by the wife being in possession of the land under regular chain of title from such purchaser dating back to the location, it was error, in an action of trespass to try title brought against them for the land by the heirs of W., to exclude proof of their title on the ground that it was an equitable title and their claim a stale demand, since, so long as the defendant can assert an equitable title without invoking affirmative relief, the doctrine of stale demand does not apply.

**4.—Same—Patent Inuring to Benefit of Assignee of Certificate.**
The issuance of the patent to the heirs of W. did not vest any title to the land in his brothers and sisters.

Appeal from the District Court of Fannin. Tried below before Hon. Ben H. Denton.

*Richard B. Semple*, for appellants.

*Taylor & McGrady*, for appellees.

TALBOT, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought by appellants originally against J. F. Cornelius and others, June 24, 1901, to recover 640 acres of land patented to the heirs of Casper Whisler, March 4, 1847, by virtue of an unconditional certificate issued July 7, 1846. November 4, 1901, pending this suit, J. F. Cornelius died, leaving surviving him as his only heirs the appellees herein. W. F. Cornelius was appointed administrator of the estate of J. F. Cornelius, deceased, and on January 24, 1902, qualified as such. On the 23d day of December, 1902, scire facias was issued and served upon him and the other heirs of the said J. F. Cornelius, deceased, making them parties to this suit, and at their request a severance from the other defendants was had and the cause tried between appellants and appellees on the 25th day of February, 1903. Appellees disclaimed as to all the

land except that portion described in their answer, and as to that pleaded not guilty and the statutes of limitation of five and ten years. After the introduction of the evidence the court instructed a verdict for appellees, and from the judgment rendered thereon this appeal is prosecuted.

The record discloses the following facts: Casper Whisler, a single man, emigrated to the Republic of Texas prior to October 1, 1837, and remained a citizen thereof until his death in the fall of 1842. He married in May, 1842, and died in the early part of the fall of the same year, leaving his wife, but no child or children surviving him. An unconditional certificate was issued to his heirs on the 7th day of July, 1846, and located on 640 acres of land in Fannin County, of which the land in controversy in this suit forms a part. Whether there was a conditional certificate issued to Whisler prior to the issuance of the unconditional certificate, does not clearly appear, but that it was is inferable from the circumstances of the case. A patent was issued to Casper Whisler's heirs for the land March 4, 1847. Casper Whisler's widow, Catherine, married Sylvester Lockwood, in February, 1843, and in 1846 they sold the certificate which was located on the land to one Curtis Moore. The sale of the certificate was made before its location. Curtis Moore sold and conveyed the whole 640-acre tract to B. S. Walcott, for a valuable consideration, by deed dated December 6, 1853, which was recorded in the deed records of Fannin County in February, 1855. In 1860 or 1861 B. S. Walcott took actual possession of the land and made improvements thereon, and he and appellees and those who claim under him have had and held continuous adverse possession of the same from that time down to the present, using, cultivating and paying the taxes thereon. It was admitted upon the trial that appellees held a regular chain of title from and under the said B. S. Walcott, who died in 1879; that said deeds were duly registered, and that all taxes had been paid. That adverse possession by appellees had been continuous since the death of B. S. Walcott, and that whatever title the said B. S. Walcott had at his death has passed to appellees and other defendants in the suit. Appellant Helen Zearing was a niece and Leah Sanders was a sister of the deceased, Casper Whisler. Helen Zearing has been a married woman since 1869 and Leah Sanders since 1843. Neither of the appellants have ever been in possession of the land sued for, nor paid taxes thereon.

By virtue of the Act of December 14, 1837, a single man who emigrated to Texas subsequent to the declaration of independence and prior to the 1st day of October, 1837, and remained a citizen of the Republic for three years, was entitled to a certificate for 640 acres of land. Under this law he had the right to demand the certificate and to locate it upon any of the unappropriated public domain. The right to the certificate when earned became a property right which he could dispose of by gift or sale. It has been said that such a right, though neither real nor personal property in esse, was nevertheless an inchoate right to get

the quantity of land out of some part of the public domain as provided by the government. It was a right or interest of such character as to be the subject of a contract and capable of being sold. The certificate, when issued, was not real property, but a mere right to acquire land. It was of the character of personalty, and could be sold and transferred as a chattel. Johnson v. Newman, 43 Texas, 639.

The fourth section of the Act of January 20, 1840, provides that: "All property which the husband or wife may bring into the marriage, except land and slaves and the wife's paraphernalia, and all the property acquired during the marriage, except such land or slaves, or their increase, as may be acquired by either party by gift, devise or descent, and except also the wife's paraphernalia, acquired as aforesaid, and during the time aforesaid, shall be the common property of the husband and wife, and during the coverture may be sold or otherwise disposed of by the husband only; it shall be first liable for all the debts contracted by the husband during the marriage, and for debts contracted by the wife for necessaries during the same time; and upon the dissolution of the marriage, by death, after the payment of all such debts, the remainder of such common property shall go to the survivor, if the deceased have no descendant or descendants; but if the deceased have a descendant or descendants, the survivor shall have one-half of such common property, and the other half shall pass to the descendant or descendants of the deceased."

It is believed to be immaterial whether the certificate which Whisler was entitled to receive from the government had been issued before his death or afterwards. It will be noted that under the Act of January 20, 1840, all property brought into the marriage by the husband or wife, except such as therein enumerated, became the common property of the husband and wife, and the remainder of such common property, upon the death of one of the spouses without issue, after the payment of debts, descended to and vested in the survivor. If the certificate in question had not been issued before the marriage or death of the said John Whisler, still the right to it had been acquired before either such event, and upon his marriage became a community right of himself and wife. Or if issued before his marriage or death, it was personal property, and in either case, upon his death without a child or children surviving him, became the absolute property of his wife. Mrs. Catherine Whisler, being the owner of one-half interest in the certificate or right thereto as community property, and having inherited the other half upon the death of her husband, as his sole heir, the subsequent issuance of the certificate and patent in the name of the heirs of John Whisler would not vest any title to the certificate, or the land upon which the same was located, in his brothers or sisters; but whatever right was conferred by such certificate and patent vested in her, who acquired by legal succession the original right as owned by John Whisler at the date of his death. Johnson v. Newman, 43 Texas, 628; Robertson v. Dubose, 76 Texas, 1; Neal v. Bartleson, 65 Texas, 478.

34 Civ.—33

The sale and transfer of the certificate by Mrs. Catherine Lockwood and her then husband, in 1846, to Curtis Moore, passed to him the right to acquire land under it. Barker v. Swenson, 66 Texas, 409. He located it upon the 640 acres of land described in appellants' petition, and by an unbroken chain of title the ownership of that portion claimed by appellees is now vested in them. Adverse possession and the assertion of right to the land under the transfer of the certificate by Mrs. Lockwood to Moore has existed through B. S. Walcott, to whom Moore sold in 1853, and through those who have held and claim the land under Walcott, since 1860 or 1861 down to the present time. This assertion of claim and title through the transfer to Moore is certainly sufficient to exculpate them from the charge of laches and stale demand. It follows therefore from what we have said that appellants' contention, "that if Curtis Moore had any right or title to the land when it was patented to the heirs of Casper Whisler, deceased, such title, being based on the transfer of the certificate to him by Mrs. Lockwood, was only equitable in its character, and in order to prevail against the legal title of appellants, who are the grantees in said certificate and patent, must have been asserted within ten years after the issuance of said patent," is not warranted by the law and facts and can not be sustained.

Besides, if it should be conceded that Moore's title was only an equitable one, still it has been held that the exclusion of proof of such title, interposed as a defense against parties claiming as the heirs of the patentee, on the ground that it was stale, was error. Cox v. Bray, 28 Texas, 260. The rule seems to be that so long as the defendant can assert an equitable title without invoking affirmative relief, the doctrine of stale demand does not apply. Hensel v. Kegans, 8 Texas Civ. App., 583, 28 S. W. Rep., 705; 1 Pom. Eq. Jur., secs. 418, 419. In the view we have taken of the case, appellees' right to the land in controversy is not dependent upon their plea of limitation, and for that reason the question has not been discussed. It would seem, however, that all the appellants are barred, except Mrs. Leah Sanders.

Believing that the proper disposition was made of the case in the court below, the judgment of that court is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is contended by appellant in his motion for a rehearing that the law in force at the date of Casper Whisler's death recognized his brothers and sisters, there being neither father nor mother, as his heirs, and that we were in error in holding that "Mrs. Catherine Whisler, being the owner of one-half interest in the certificate or right thereto as community property and having inherited the other half upon the death of her husband, as his sole heir, the subsequent issuance of the certificate and patent in the name of the heirs of John Whisler would not

vest any title to the certificate, or the land upon which the same was located, in his brothers or sisters; but whatever right was conferred by such certificate and patent vested in her, who acquired by legal succession the original right as owned by John Whisler at the date of his death." In support of this contention we are cited to article 577, Hartley's Digest of the Laws of Texas, which is a part of the Act of January 28, 1840, relating to the descent and distribution of intestates' estates.

The ruling criticised is based upon the fourth section of the Act of January 20, 1840. This section is quoted in our original opinion, and provides in substance that all property brought into the marriage, except certain property therein enumerated, which did not include land certificates or the right thereto, became the common property of the husband and wife, and upon the dissolution of the marriage by death, the remainder, after the payment of certain debts therein named, should go to the survivor.

John Whisler and his wife Catherine married in May, 1842, and he died early in the fall of 1842. The fourth section of the Act of January 20, 1840, was in force at the date of their marriage, and when Whisler died, unless repealed by the Act of January 28, 1840. The former act seems to deal with the marital rights of parties and specifically with their common property; while the latter relates generally to the descent and distribution of intestates' estate. Besides, it is believed to be manifest from subsequent legislation and the decisions of our courts that the Act of January 28, 1840, did not repeal the fourth section of the Act of January 20, 1840. It will be found upon examination that the Legislature regarded the said section of the latter act in force after the passage of the Act of January 28, 1840, because said section was expressly repealed by the sixth section of the statute of March 13, 1848, entitled "An act better defining the marital rights of parties." In the case of Portis v. Parker, 22 Texas, 701, certain property was levied on as the property of David G. Portis. His wife, Mrs. Rebecca Portis, claimed the property as her separate estate. It appeared that they were married on the 28th day of December, 1843, and that the property at the date of the marriage was Mrs. Portis' separate property; and while the court held in that case that the provisions of the statute of March 13, 1848, were decisive of the question involved, yet the fourth section of the Act of January 20, 1840, was discussed and treated as in force and applicable to the facts of that case.

Furthermore, both the statutes of January 20 and January 28, 1840, were passed at the same session of the legislative body that enacted them, and we are of opinion that there is not such conflict or repugnance between the provisions of said acts as would prevent the application of the rule that in such cases both acts should be upheld and enforced. The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.