**LAS MENDOZAS, INC., Appellant,**

v.

**W. H. POWELL et al., Appellees.**

**No. 22662.**

United States Court of Appeals
Fifth Circuit.

Nov. 4, 1966.

Sam Houston Clinton, Jr., Austin, Tex., for appellant.

Richard Owens, Fort Worth, Tex., Donald F. Nobles, Lloyd Lochridge, Austin, Tex., for appellees.

Before GEWIN and THORNBERRY, Circuit Judges, and WEST, District Judge.

WEST, District Judge:

This case involves a rather complicated real estate transaction that failed to materialize as planned. Appellant, Las Mendozas, Inc., a Colorado corporation, was engaged in the business of buying, selling, and trading lands in the United States, Brazil, and other countries. On October 10, 1960, H. K. Johnston, President of and acting for appellant, Las Mendozas, entered into a written agreement with appellee, C. G. Johnson, whereby it was agreed that C. G. Johnson would convey 1040 acres of land in Douglas County, Missouri, along with certain other described property to appellant, Las Mendozas, in exchange for certain corporate stock to be delivered by appellant to C. G. Johnson. The stock to be transferred to C. G. Johnson was to be acquired by appellant from one Ted F.

Dunham in exchange for some land in Brazil which appellant was to convey to Dunham. Appellee, Rattikin Title Company, was to act as closing agent for the transaction, and, according to the express terms of the written agreement of October 10, 1960, appellee, W. H. Powell, a realtor, was to act as agent for both appellant, Las Mendozas, Inc., and C. G. Johnson.

On December 16, 1960, H. K. Johnston executed an instrument for the purpose of conveying the Brazilian land to Dunham and received certain corporate stock in exchange therefor. But the number of shares of stock received by H. K. Johnston was apparently less than had been agreed upon and so, by agreement dated January 10, 1961, these differences were apparently adjusted. The parties then met in the office of Rattikin to close the entire transaction, at which time appellant delivered to Rattikin a check in the amount of $1,000 to be used for payment of anticipated closing costs and C. G. Johnson delivered to Rattikin his deed conveying to H. K. Johnston, who was acting for appellant, the lands in Douglas County, Missouri, together with the other property called for by the agreement of October 10, 1960, and received in exchange therefor the stock which H. K. Johnston had received from Dunham. But on or about January 12, 1961, Dunham, for some reason or other, apparently became dissatisfied with the deal and threatened to rescind the whole transaction unless, as he put it, appellant was willing to "fulfill its obligations" under the various agreements. Thereafter, on January 15, 1961, before the C. G. Johnson deed had been recorded, Rattikin, apparently at Powell's request, delivered the deed to Powell who in turn ultimately delivered it back to C. G. Johnson. On or about December 4, 1962, C. G. Johnson sold this property to a third party and consequently appellant never acquired it as contemplated by the various agreements referred to. On December 3, 1963, appellant filed this suit against Rattikin, C. G. Johnson, and Powell, demanding specific performance,

or in the alternative, damages allegedly sustained as a result of the non-performance of the contracts by the various defendants. In the trial court, appellees Rattikin and Powell moved for summary judgment on the grounds that there was no genuine issue as to any material fact and that plaintiff's cause of action, if any it had, was barred by limitation. After stating that " * * * the Court having considered the pleadings in the action, the request for admissions, and the answers to interrogatories, and having heard oral argument and having found that there is no genuine issue of fact to be submitted to the trial court, and having concluded that defendant, W. H. Powell, is entitled to summary judgment as a matter of law and that defendant Rattikin Title Company is entitled to judgment as a matter of law * * * *", the court proceeded to grant a summary judgment in favor of both Powell and Rattikin. It is the propriety of this order that is the subject matter of this appeal.

In the pre-trial order, approved by counsel for all parties to this suit, and entered in the record by the trial court, the claims of the appellant, Las Mendozas, were declared to be substantially as set out above. It is appellant's contention that it performed all of its obligations under the agreements of October 10, 1960 and January 10, 1961, and that it is now entitled to either specific performance, or in the alternative, damages from appellees for their failure to perform under these agreements. The claims of the appellee, Powell, were stated as follows:

"4. In general the claims of Defendants are:

"(a) Defendant, W. H. Powell, while admitting receipt of the Johnson deed in question and his subsequent delivery of the deed to Defendant Johnson, asserts that he was justified in doing so: first, because the transaction contemplated in the written agreements was never *consumated* second, because he relied upon alleged statements and actions of the Plaintiff

to the effect that Plaintiff did not intend to make the lien payment which was currently due; third, because any wrongful act he may have committed occurred more than two years prior to filing suit and cause of action is allegedly barred by the two year statute of limitations."

And the claims of appellee, Rattikin, are stated in the pre-trial order as follows:

"(b) Defendant, Rattikin Title Company admits receipt of the Johnson deed, its failure to have the same recorded, its delivery of same to Defendant Powell, but seeks to justify its action on the grounds, first, that Powell was, at the time, an alleged agent of Plaintiff; second, that it was under no duty to see that the deed was recorded and that after it delivered same to the alleged agent, Powell, any duty in the premises was completed; and, third, that any wrongful act committed by it occurred more than two years prior to the filing of the suit so that any cause of action Plaintiff might have is barred by the two year statute of limitations."

Appellant argues now that the trial court was in error in concluding that there were not genuine issues of fact to be submitted to the court, and its points to such issues as (1) when and whether the dispute between Powell, appellant and Dunham was resolved; (2) whether or not Powell was acting as agent for appellant when he received the deed from Rattikin; (3) whether or not Powell delivered the deed to C. G. Johnson at the latter's behest, and (4) when did appellant first learn of the conveyance of the property by C. G. Johnson to some third party. While these may well be unresolved issues, they are nevertheless immaterial to a decision in this case.

The record clearly supports the granting of summary judgment in favor of both appellees on the ground that the claims asserted by appellant, Las Mendozas, against these appellees were, at the time this suit was filed, barred by the Texas two year statute of limitations.

There are no genuine issues of fact insofar as that question is concerned.

The Texas statute of limitations which is applicable to this situation is Article 5526, R.C.S. of Texas, which reads, in pertinent part, as follows:

"Article 5526.

"There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

\*　　\*　　\*　　\*　　\*

"2. Actions for detaining the personal property of another, and for converting such property to one's own use.

"3. Actions for taking or carrying away the goods and chattels of another.

"4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

"\* \* \*."

There is no doubt that a deed to real estate may be the subject of conversion in Texas such as is contemplated by Article 5526, R.C.S. of Texas. Barker v. Swenson, 66 Tex. 407, 1 S.W. 117 (1886). And in the instant case, there can be no doubt that appellant is seeking, *from these appellees*, specific performance of their alleged obligation to deliver the deed itself, or in the alternative, damages. This is quite evident from the letter of March 20, 1961, hereinafter referred to, written by appellant to Powell. Appellant could not be seeking in this suit delivery by Powell and/or Rattikin of the land or property itself because these appellees have never been purported to be the owners or possessors of the property. All that these appellees have ever had was possession of the deed to the property. All parties, including appellant, have known all along that the owner and possessor of the property in question was C. G. Johnson, and not appellees, Powell or Rattikin. Thus, as to these appellees, Article 5531, R.C.S. of Texas, cited by appellant and providing that any action for specific performance

of a contract for the conveyance of real estate shall be commenced within four years after the cause of action shall have accrued is not applicable to this suit against Powell and Rattikin.

Article 5527, R.C.S. of Texas, provides for a four year statute of limitations on "actions for debt where the indebtedness is evidenced by or founded upon any contract in writing." Both appellees have pleaded the two year statute of limitations, whereas appellant, Las Mendozas, contends that its claim against these appellees is governed by the four year statute of limitations, and that thus its suit was timely filed.

We will first consider the claim against appellee, Powell. This could not possibly be, under Texas law, a suit for " * * * debt where the indebtedness is evidenced by or founded upon any contract in writing * * * " such as to be susceptible to the four year statute of limitations. The only "written contract" in which both appellant and Powell were involved was the agreement of October 10, 1960. But this agreement was principally an agreement between appellant, Las Mendozas, and appellee, C. G. Johnson. Powell was simply named in the agreement as agent for both parties. There was no enumeration of any rights or obligations assumed by Powell, but appellant now urges that Powell's obligations are to be implied by the agreement appointing him as agent, and consequently his obligations must be assumed to have been understood. But if this is so, in order to establish such obligations on the part of Powell, parol evidence would have to be used. Under Texas law, where an agreement fails to set out specifically the obligations, the violation of which form the basis of a suit, it is considered to be an oral agreement subject to the two year statute of limitations. Shaw v. Bush, 61 S.W.2d 526 (Tex.Civ.App.1933); Cowart v. Russell, 135 Tex. 562, 144 S.W.2d 249 (Comm.App.1940); Jordan v. Concho Theatres, 160 S.W.2d 275 (Tex.Civ.App.). We do not believe that International Printing Pressmen and Assistants' Un-ion of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729 (1947) is contrary to these cases as it is clearly distinguishable on its facts. As stated by the Court in *Cowart*, supra:

"It is well settled that 'in order for an action to be one for an indebtedness evidenced by or founded upon a contract in writing, as referred to in the above quoted statute, the action must be between the immediate parties to the contract, or those for whose benefit it was made, or their privies, and the written instrument relied upon must itself contain a contract to do the things for the nonperformance of which the action is brought.' Shaw v. Bush, Tex.Civ.App., 61 S.W.2d 526, 528, writ refused. Also authorities there cited, especially McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437."

We believe this to be the law of Texas. If the obligations undertaken must be implied from the contract to such an extent that parol evidence is required to define them, then the contract must be considered as partly written and partly oral and thus governed by the two year statute of limitations. Teneha Oil Co. v. Blount, 368 S.W.2d 655 (Tex.Civ.App. 1963); Barbier v. Barry, 345 S.W.2d 557 (Tex.Civ.App.1961); Cannady v. Martin, 98 S.W.2d 1009 (Tex.Civ.App.); Crockett v. Union Terminal Co., 342 S.W.2d 129 (Tex.Civ.App.1960).

Appellant further urges that since the agreement of October 10, 1960, designates Powell as its agent, he, Powell, was under a duty not to act adversely to the interest of his principal, and since this duty arose under the October 10, 1960 written agreement, appellant's claim for violation of that duty is covered by the four year statute of limitations. But it is well settled that the two year statute of limitations applies to alleged misconduct of an agent, even though a written contract may have been involved. Gordon v. Rhodes and Daniel, 102 Tex. 300, 116 S.W. 40 (1909); Adams v. San Antonio Life Insurance Co., 185 S.W. 610 (Tex.Civ.App.1916); Mutual Life Insur-

ance Company of New York v. Garland, 23 Tex.Civ.App. 380, 56 S.W. 551 (1900).

■ Appellees next contend that even if the two year statute of limitations applies, the two year period would not have commenced to run until July 30, 1963, the date on which appellant contends it first learned of the actual conveyance of the property in question by C. G. Johnson to some third party. The Court cannot accept this contention. It was on or about January 15, 1961, that Rattikin delivered the deed to the Douglas County property to Powell, as agent of appellant, without having recorded it. Appellant knew of this transfer of the deed from Rattikin to Powell as early as March of 1961 as is evidenced by appellant's letter to Powell dated March 20, 1961, wherein they said:

> "It has come to our attention that you were handed on January 16 the deeds to 2560 acres of Latimer County, Oklahoma land by an official of Rattikin Title Co., Forth Worth, Texas, for delivery to this company. Further, it is understood you are withholding from this company the documents covering 1042 acres of Douglas County, Missouri land.

> "We ask that you forward these documents to this office immediately or be *held* responsible for damages, for retention of legal documents."

Further evidence of the fact that appellant knew that Powell had the deed and that it had not been recorded is found in the letter from Rattikin to Robert Reynolds, Secretary-Treasurer of appellant, Las Mendozas, Inc., dated October 3, 1961, wherein it is stated that "The Warranty Deed covering approximately 1042 acres in Douglas County, Missouri, executed by C. G. Johnson et ux, to H. K. Johnston, was picked up from us by your agent, Mr. W. H. Powell, before the deed was recorded." That letter further informed appellant that Rattikin had given Powell a check for $2.00 for recording fees, but that Powell had returned the $2.00 check but "did not return the deed, therefore we do not know where the deed is at this time."

And lastly, in answer to an interrogatory propounded by Powell, appellant stated that "On or about September 22, 1961, in a face to face conversation with W. H. Powell, I inquired about the Johnson deed and other papers and Powell said he did not possess them."

■ Consequently, it is abundantly clear that appellant knew, or should have known, that something was amiss as early as March 20, 1961, as evidenced by its letter of that date to Powell, and it certainly knew by September 22, 1961 at the latest, that Powell was not going to return the deed when a face to face confrontation with Powell resulted in Powell's statement that he no longer possessed the documents sought by appellant. The two year statute of limitations on a claim for conversion begins to run from the time when the owner had notice, or by the use of reasonable diligence would know of the conversion. 14 Tex.Jur.2d 65. Since this suit was not filed against Powell until December 23, 1963, more than two years elapsed between the time appellant first had knowledge of the fact that the deed which it claimed to be its personal property had been detained and/or carried away by Powell and the time it filed the suit for its recovery. If Powell's actions amounted to a breach of an agency agreement between Powell and appellant, appellant also knew, more than two years prior to filing its suit, that this breach had occurred.

■ Insofar as appellant's claim against Rattikin is concerned, little need be said. There is obviously no written contract between appellant and Rattikin. Appellant claims that a check signed by it, payable to and endorsed by Rattikin, given in payment of anticipated closing costs, and a Purchaser's Statement marked "VOID" on its face, are sufficient to constitute a written contract. Such a contention is untenable. These two documents in no way indicate any obligation undertaken by Rattikin, and hence, they cannot form the basis of a suit on a written contract. If appellant has any claim against Rattikin, it is for an

indebtedness not evidenced by a contract in writing, and thus it would be covered by the Texas two year statute of limitations. If, as appellant now contends, Rattikin was wrong when it delivered the deed to Powell, the man designated in the October 10, 1960 agreement as appellant's agent, reference to Rattikin's letter to appellant dated October 3, 1961 makes it abundantly clear that appellant, at that time, was well aware of the fact that the deed had not been recorded, that it had been delivered by Rattikin to Powell, and that Powell had failed and refused to record it or deliver it to appellant. This was more than two years prior to the commencement of this suit.

Hence, any claim that appellant might have had against Rattikin arising out of this transaction is also barred by the Texas two year statute of limitations.

The judgment of the lower court is affirmed.